UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

ABDUL KANU,                              :
                        Plaintiff,       :       No. 2:13-cv-6451
                                         :
            v.                           :
                                         :
WARDEN LINDSEY, LEACH,                   :
MICHAEL MOORE, PANARELLO,                :
SGT. BRYAN, MS. APT, GOETTER, ATKINS,    :
OFFICER WACKOO, C.E.C.,                  :
                        Defendants.      :
_____

**MEMORANDUM**
**Defendants' Motion for Summary Judgment, ECF No. 58 - Granted**
**Plaintiff's Motion for Summary Judgment, ECF No. 68 - Denied**

**Joseph F. Leeson, Jr.**                          **March 17, 2016**
**United States District Judge**

## I.      INTRODUCTION

On November 4, 2013, Plaintiff initiated this action pursuant to 42 U.S.C. § 1983 against

employees of the George W. Hill Correctional Facility in Thornton, Pennsylvania based on

events that occurred during his incarceration. On March 6, 2015, Defendants filed a Motion for

Summary Judgment. ECF No. 58. Plaintiff filed a Motion for Summary Judgment on March 31,

2015. ECF No. 68. For reasons set forth herein, Defendants' Motion is granted and Plaintiff's

Motion is denied.

## II.     BACKGROUND

### A.      Factual History

On May 30, 2013, Plaintiff was charged by the Chester City Police Department with

attempted murder, aggravated assault, conspiracy, receiving stolen property, possession of a

1

firearm, fleeing or attempting to elude a police officer, and related charges.  Defs.' Stmt Facts ¶ 1, ECF No. 59; Defs.' Mot. Summ. J., Ex. A, ECF No. 58-1; Commonwealth v. Abdul Kanu, CP-23-CR-0005961-2013 (Delaware Cty. Ct. Com. Pl. May 30, 2013).  He was detained at the George W. Hill Correctional Facility ("GWHCF") without bail pending trial.  Id.  Upon arriving at the GWHCF, Plaintiff was asked questions about possible gang affiliations, including his tattoos, which include an "M.O.B." tattoo because M.O.B. is known to be a gang.  Defs.' Stmt Facts ¶ 7; Defs.' Mot. Summ. J. Ex. C, ECF No. 58-3.  Plaintiff denied being a member of any gang, but the intake officer did not find him to be truthful and noted a "possible M.O.B. affiliation."  Defs.' Stmt Facts ¶ 8; Defs.' Mot. Summ. J. Ex. C.  Because of the violent nature of the charges levied against him, Plaintiff was placed in Unit 10 of the maximum security unit of GWHCF.  Defs.' Stmt Facts ¶¶ 6, 9; Defs.' Mot. Summ. J., Ex. B, ECF No. 58-2; Pl.'s Stmt Facts 1, ECF No. 68.

On August 10, 2013, he was asked by staff to surrender his bottom bunk to another inmate with special medical needs and to move to another cell.  Defs.' Stmt Facts ¶ 10; Defs.' Mot. Summ. J., Ex. D, ECF No. 58-4; Pl.'s Stmt Facts 1.  The parties offer different versions of what happened next.[1]

According to Defendants: Plaintiff became hostile, began to curse and threaten staff, and shouted to other inmates "We don't have to listen to these fake cops. There is [sic] more of us than them."  Defs.' Stmt Facts ¶ 11; Defs.' Mot. Summ. J., Ex. D.  After Plaintiff made these

---

[1]       With a few exceptions discussed herein, the Court finds there are no genuine issues of material fact that preclude the entry of summary judgment.  Specifically, the parties' factual disputes are not "material" to the constitutional claims or the summary judgment motions and/or are not "genuine."  Where appropriate, the Court has viewed the facts in the light most favorable to the party against whom summary judgment is being entered.  Moreover, Plaintiff's request to put the burden of proof on "Defendants to show that what they are claiming is absolutely true and correct," see Pl.'s Resp. Defs.' Mot. Summ. J. 4, is not the applicable standard.

statements and failed to obey the instructions of staff to stop, Plaintiff was taken to administrative segregation pending a hearing on disciplinary charges.  Defs.' Stmt Facts ¶ 12; Defs.' Mot. Summ. J., Ex. F, ECF No. 58-6.  On August 11, 2013, Plaintiff was interviewed by Sergeant Panarello about the charges.  Id. at ¶ 13.  Plaintiff admitted to his improper statements to Officer Goetter and stated that the staff better watch how they talk to him or he will fight.  Id. He then stated that he was not going to listen to the staff and began to curse at Sergeant Panarello.  Id.  On August 21, 2013, Plaintiff was given a hearing on the charges wherein he was permitted to call witnesses and provide an explanation for his actions.  Id. at ¶ 14.  He was found guilty of the disciplinary charges and given 20 days of detention, beginning on August 10, 2013, and ending on August 30, 2013.  Id.  On August 30, 2013, Plaintiff was removed from disciplinary detention and housed in another cell in administrative segregation.  Id. at ¶ 15.  As of August 30, 2013, Plaintiff was on administrative segregation and was not being disciplined for the August 10, 2013 incident.  Id.  Inmates who are not being subjected to discipline can be housed in either Unit 3, which is also referred to as the Special Management Unit ("SMU"), or in Unit 10.  Id. at ¶¶ 18-19.  On October 10, 2013, Plaintiff filed a grievance with respect to his housing.  Id. at ¶ 21; Defs.' Mot. Summ. J., Ex. G, ECF No. 58-7.  In response to the grievance, Plaintiff was informed that he had not been on disciplinary detention for several weeks and had already been moved again to Unit 10.  Id.; Defs.' Mot. Summ. J., Ex. F (Inmate Housing History reflecting that Plaintiff was moved to maximum security on August 10, 2013, to maximum security disciplinary detention on August 20, 2013, moved to another cell in maximum security on August 30, 3013, and moved out of segregation on October 19, 2013).

According to Plaintiff: When asked to move his cell and surrender his bunk, Plaintiff advised Officer Walker that he also had a bottom bunk pass, which was confirmed.  Pl.'s Stmt

Facts 1.  Officer Walker asked if any other inmates on the block would voluntarily give up their bottom bunk.  Compl. ¶ 2.  Defendants Panarello and Goetter then entered the block and got into a verbal altercation with two other inmates about moving cells, including Steven Davis.  Id. at ¶ 4.  Shortly thereafter, Davis was brought to Plaintiff's cell in handcuffs and relocated.  Id. at ¶ 5.  Because Davis was not allowed out of his cell due to the altercation, he asked Plaintiff to retrieve some of his belongings from his prior cell.  Id. at ¶¶ 6-7.  Defendant Goetter observed inmate Rollie, Davis' former cellmate, pass several items to Plaintiff.  Id. at ¶ 7.  At the end of recreation time, when Plaintiff returned to his cell, Defendant Panarello ordered him to pack up his belongings because he was being moved.  Id. at ¶ 10.  Defendant Panarello used obscene language to Plaintiff, who replied with obscene language.  Id. at ¶ 11.  Plaintiff was escorted to the SMU, which has restrictive exercise, visitation, and law library use time.  Id. at ¶ 12.  Plaintiff, who had a liver transplant, was physically and mentally affected by such conditions.  Id. at ¶ 13.  On August 11, 2013, Plaintiff submitted a grievance regarding these events.  Id. at ¶ 14; Compl. Ex. A.  After receiving a response, Plaintiff appealed the grievance.  Id. at ¶ 14; Compl. Ex. B.  On August 11, 2013, Defendant Panarello delivered a falsified disciplinary report written by Defendant Goetter regarding the events of the previous day.  Id. at ¶ 15; Compl. Ex. C.  Plaintiff submitted a grievance regarding this report, for which he did not receive a response.  Id. at ¶ 16; Compl. Ex. E.  On August 20, 2013, Plaintiff had a hearing on the (allegedly falsified) disciplinary charges and gave the hearing officer, Defendant Abt, the names of four witnesses.  Id. at ¶ 18.  Defendant Abt was asked to review the surveillance video, but failed to comply.  Pl.'s Stmt Facts 2.  On August 21, 2013, Defendant Abt informed Plaintiff that she had spoken with his witnesses, but they did not support his account of the events.  Compl. ¶ 19.  Defendant Abt did not inform Plaintiff that he had the right to call witnesses or present

documentary evidence.  Id. at ¶ 20.  He was found guilty of the misconduct charge and given 20

days disciplinary detention.  Id. at ¶¶ 19-20.  Plaintiff filed a grievance alleging due process

violations at the disciplinary hearing, but no response was received.  Id. at ¶ 21.  Plaintiff

inquired of Defendant Leach on September 3, 2013, September 9, 2013, September 25, 2013,

and October 21, 2013, why he was still in the SMU, but received no response.  Id. at ¶¶ 25, 28.

Plaintiff submitted an inmate request form to Defendant Lindsey on September 4, 2013.  Id. at ¶

26; Compl. Ex. N.  On September 5, 2013, and September 13, 2013, Plaintiff spoke with

Defendant Moore about his classification.  Id. at ¶¶ 27, 30.  Plaintiff complained to Lieutenant

Platt on September 12, 2013, who advised him that he was being held because he wanted to

"start a Chester vs. Philly beef."  Id. at ¶ 29.  Defendant Atkins continued to harass him,

including an incident where Defendant Atkins dropped Plaintiff's tray and called him a snitch in

front of case manager Dan and Defendant Bryan for writing grievances.  Id. at ¶ 31.  Plaintiff

filed a grievance for these incidents and against Defendant Bryan for encouraging such conduct.

Id. at ¶ 31.

### B.    Procedural History

On November 7, 2013, Plaintiff's pro se Complaint was filed, Compl., ECF No. 4, and

his request for leave to proceed in forma pauperis was granted, ECF No. 3.  Plaintiff names as

Defendants the following employees of the George W. Hill Correctional Facility: Warden

Lindsey, Mr. Leach, Michael Moore, Sergeant Panarello, Sergeant Bryan,[2] Chris Atkins,

Community Education Centers, Inc. ("CEC"), Ms. Abt,[3] Officer Wackoo,[4] and Officer Goetter.

---

[2]       Incorrectly identified as "Bryant Sgt."  See Defs.' Mot. Summ. J. ¶ 4, ECF No. 58.

[3]       Incorrectly identified as "Apt Sgt."  See Defs.' Mot. Summ. J. ¶ 4, ECF No. 58.

[4]       Originally identified as "Auckoo Officer."  See Summons, ECF No. 19.

Id.  Plaintiff raises the followings issues: First, he asserts substantive due process claims challenging his confinement in the SMU as punishment.  He alleges that Defendants Panarello and Goetter filed a falsified misconduct charge against him that led to his disciplinary placement in segregation, and that he was unlawfully confined in segregation after serving disciplinary detention.  Second, Plaintiff asserts a procedural due process claim based on his ongoing confinement in the SMU after his disciplinary sentence had expired, which he alleges Defendants Lindsey, Leach, Moore, and Wackoo knew about and failed to take corrective action.  Third, Plaintiff claims that Defendant Abt violated his procedural due process rights at the misconduct hearing for the incident on August 10, 2013.  Fourth, Plaintiff avers an equal protection violation based on his confinement in the SMU after his disciplinary sentence had expired.  Fifth, Plaintiff, citing the First and Fourteenth Amendments, alleges that Defendants Atkins and Bryan committed constitutional violations arising from Defendant Atkins' alleged harassment, which Defendant Bryan encouraged.  Finally, without making any factual allegations against it, Plaintiff names CEC as a Defendant.

Defendants Lindsey, Leach, Moore, Bryan, Abt, Goetter, and CEC (hereinafter "Defendants")[5] filed a Motion to Dismiss on January 6, 2014, ECF No. 17, which was denied without prejudice on September 12, 2014, ECF No. 32.  An Answer to the Complaint was filed by these Defendants on September 25, 2014.  ECF No. 34.  Discovery thereafter commenced.

On March 6, 2015, Defendants filed a Motion for Summary Judgment.  Defs.' Mot. Summ. J., ECF No. 58.  A Response to the Motion was filed on March 19, 2015, ECF No. 64, and a Reply was filed on March 26, 2015, ECF No. 66.  Plaintiff filed a Motion for Summary

---

[5]     Defendants Panarello, Wackoo, and Atkins were never served with the Complaint due to insufficient address information.  See ECF No. 19.

Judgment on March 31, 2015, Pl.'s Mot. Summ. J., ECF No. 68, to which a Response was filed

on April 16, 2015, ECF No. 73.

## III.   STANDARD OF REVIEW – MOTIONS FOR SUMMARY JUDGMENT

Summary judgment "should be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Turner v.

Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).  A disputed fact is "material" if proof

of its existence or nonexistence would affect the outcome of the case under applicable

substantive law, and a dispute is "genuine" if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248,

257 (1986).  The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once such a showing has been made, the non-moving party must go beyond the pleadings with

affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific

material facts which give rise to a genuine issue.  Fed. R. Civ. P. 56; Celotex, 477 U.S. at 324;

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the

non-moving party "must do more than simply show that there is some metaphysical doubt as to

the material facts").  The party opposing the motion must produce evidence to show the

existence of every element essential to its case, which it bears the burden of proving at trial,

because "a complete failure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; see also Harter v.

G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).  "Inferences should be drawn in the light most

favorable to the non-moving party, and where the non-moving party's evidence contradicts the

movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993).

IV.   **ANALYSIS**

A.   **Monell Liability - To establish liability under 42 U.S.C. § 1983 against a governmental agency, a plaintiff must show (1) a deprivation of a federal right; (2) a relevant policy or custom attributable to the governmental agency; and (3) a causal link between the agency action and the deprivation of the federal right.**

"To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or the laws of the United States committed by a person acting under the color of state law." Natale v. Camden County Corr. Facility, 318 F.3d 575, 580-81 (3d Cir. 2003). "Municipalities are subject to § 1983 liability under Monell[6] only where the municipality itself causes a constitutional violation—a municipality is not subject to respondeat superior or vicarious liability under § 1983." Cloyd v. Del. Cnty., No. 14-4833, 2015 U.S. Dist. LEXIS 120385, at *5 (E.D. Pa. Sept. 10, 2015) (citing Monell, 436 U.S. at 691). "This holding has been extended to private companies performing municipal functions." Id. To hold a municipality, or a private contractor performing a municipal function, liable under section 1983, "a plaintiff must show (1) a deprivation of a federal right; (2) a relevant policy or custom attributable to the municipality; and (3) a direct causal link between the municipal action and the deprivation of the federal right." Peters v. Cmty. Educ. Ctrs., Inc., No. 11-cv-850, 2014 U.S. Dist. LEXIS 32520, at *9 and n.2 (E.D. Pa. Mar. 13, 2014) (internal citations omitted).

CEC "is a private corporation that operates the [George W. Hill Correctional Facility] under contract with the Delaware County Board of Prison Inspectors." Evans v. Cmty. Educ.

---

[6]    Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (holding, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983").

Ctrs., Inc., No. 13-1642, 2015 U.S. Dist. LEXIS 121834, at *1 (E.D. Pa. Sept. 11, 2015).  In order for CEC to be liable, Plaintiff "must provide evidence that there was a relevant [CEC] policy or custom, and that the policy caused the constitutional violation [he] allege[s]."  Natale, 318 F.3d at 584 (citing Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997)).

Defendants argue that Plaintiff has failed to set forth any evidence against CEC for Monell liability.  Defs.' Mot. Summ. J. 9-11.  Plaintiff fails to respond.  Pl.'s Resp. Defs.' Mot. Summ. J.  Moreover, Plaintiff does not allege that CEC had an unconstitutional policy or practice, that CEC acted to violate his rights, or that CEC's need to have a policy or procedure in place was so obvious that its absence was deliberately indifferent.  See Natale, 318 F.3d at 584.  Plaintiff makes no factual allegations that would impute liability to CEC; therefore, summary judgment is granted in favor of CEC.

### B. Exhaustion- SMU: The Prison Litigation Reform Act requires administrative remedies be exhausted before bringing a civil rights suit.

"The Prison Litigation Reform Act ('PLRA') prohibits an inmate from bringing a civil rights suit alleging specific acts of unconstitutional conduct by prison officials 'until such administrative remedies as are available are exhausted.'"  Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006) (quoting 42 U.S.C. § 1997e(a)).  Additionally, "a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court."  Id.  However, if prison officials interfere with an inmate's ability to file a grievance, the process is not "available."  Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003).

Defendants assert that Plaintiff failed to exhaust administrative remedies as to his housing status.  Defs.' Mot. Summ. J. 15-16.  Specifically, he failed to appeal the denial of his grievance

before filing this action.  Defs. Mot. Summ. J. Ex. G, ECF No. 58-7.  Plaintiff claims that he

filed a grievance on September 2, 2013, but never received a response.

Defendants allege that the first grievance Plaintiff filed on the housing issue was dated

October 10, 2013, but in this grievance Plaintiff complains that he "wrote several grievances of

9/2/13 and [] received no responses for them."  Defs. Mot. Summ. J. Ex. G.  Accordingly, the

Court finds that there is a genuine issue of material fact on Plaintiff's exhaustion efforts and

denies summary judgment on this ground.  See Smith v. Lagana, 574 Fed. Appx. 130, 133 (3d

Cir. 2014) (concluding that the plaintiff's "allegations concerning the unavailability of the

grievance process, coupled with uncontroverted evidence of his efforts to exhaust administrative

remedies, raised a genuine issue of material fact which should have precluded entry of summary

judgment in favor of the defendants").

### C. Substantive Due Process: Courts engage in a two-step process to determine whether a pretrial detainee's confinement violates his substantive due process rights: (1) whether the conditions serve any legitimate purpose, and (2) whether the conditions are rationally related to that purpose.

"[P]retrial detainees have federally protected liberty interests that are different in kind

from those of sentenced inmates . . . [because] pretrial detainees have liberty interests firmly

grounded in federal constitutional law."  Cobb v. Aytch, 643 F.2d 946 (3d Cir. 1981).  "[U]nder

the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in

accordance with due process of law."  Bell v. Wolfish, 441 U.S. 520, 535-37 (1979).  But, "the

Government concededly may detain him to ensure his presence at trial and may subject him to

the restrictions and conditions of the detention facility so long as those conditions and

restrictions do not amount to punishment, or otherwise violate the Constitution."  Id.  "In Bell,

the Supreme Court distinguished between punishment for the underlying crime, which is

prohibited by the Due Process Clause prior to an adjudication of guilt, and regulatory restraints

10

imposed to maintain the security of the prison, which are not." Cephas v. Truitt, 940 F. Supp. 674, 679-80 (D. Del. 1996) (citing Bell, 441 U.S. at 537-40). The courts engage in a two-step inquiry to determine whether a pretrial detainee's confinement violates his substantive due process rights: (1) whether the conditions serve any legitimate purpose, and (2) whether the conditions are rationally related to that purpose. Mestre v. Wagner, No. 11-2480, 2012 U.S. Dist. LEXIS 12088, at *13-14 (E.D. Pa. Jan. 31, 2012). The Supreme Court warned that, in addressing step two, "considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'" Bell, 441 U.S. at 540 (quoting Pell v. Procunier, 417 U.S. 817, 827 (1974)). "In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution." Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007). See also Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2012).

### 1. Disciplinary Detention - As long as procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.

Plaintiff alleges that his disciplinary detention arising from the falsified misconduct report violates his substantive due process right to be free from punishment. However, "so long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002); McDowell v. Deparlos, No. 1:15-cv-00487, 2016 U.S. Dist. LEXIS 2448, at *24 (M.D. Pa. Jan. 7, 2016) ("The filing of a false misconduct report, in and of itself, does not violate an inmate's due process rights."). As explained herein, Plaintiff

was afforded procedural due process before he was sanctioned to disciplinary detention.  Further,

he admits to using obscene language towards Defendant Panarello, see Compl. ¶ 11, thereby

negating his claim that the report was falsified.  Moreover, a sanction of twenty days in detention

for threatening prison staff is reasonably related to the legitimate goal of maintaining security

and order in the prison.  See Parkell v. Morgan, 917 F. Supp. 2d 328, 335-36 (D. Del. 2013)

(determining that the plaintiff's sanction of twenty days confinement in the hole for having

contraband was "reasonably related to the legitimate goal of maintaining security and order in

the prison").  Summary judgment is entered in favor of Defendants on this claim.

> ### 2. *Administrative Segregation- Confinement to administrative segregation is permissible if it serves a governmental interest in securing the safety of other inmates, prison officials, and the institution.*

Plaintiff alleges that his continued placement in the SMU after his disciplinary detention

expired is punishment, but Defendants argue that the mere fact he remained in Unit 3 after

finishing his disciplinary time does not mean he was being punished.  The Court agrees with

Defendants that Plaintiff offers no evidence to support his claim.  Furthermore, Plaintiff's

continued detention in the SMU, after the twenty days had elapsed, was reasonably related to

ensuring the security of the prison and the safety of other inmates and prison officials.  See

Hewitt v. Helms, 459 U.S. 460, 473 (1983) (holding that the petitioner's confinement to

administrative segregation for seven weeks pending investigation into misconduct charges served

important governmental interests in securing the safety of other inmates, prison officials, and the

institution).  Defendant Moore submitted an affidavit attesting that Plaintiff's placement in

administrative segregation following his disciplinary detention was "solely for the safety of the

facility, its staff, and its residents" based on "the violent nature of [Plaintiff's] alleged crime, and

because of his threats of violence and stated intentions to rebel against staff."  Defs.' Reply Mot.

Summ. J. Ex. 1 ¶ 7, ECF No. 66-1 (noting also that Plaintiff had possible gang ties).  See Stevenson, 495 F.3d at 69 (explaining that "it will generally be sufficient for the prison officials to submit affidavits to show that the classification was appropriate based on reasonable prison management concerns").  Plaintiff's suggestion that Defendants' gang concerns are fabricated is contradicted by the evidence, which shows that the intake officer at GWHCF had concerns about Plaintiff's possible gang affiliations when he was first transferred in.  See Defs.' Mot. Summ. J. Ex. C.  Giving due regard to the fact that whether restrictions or conditions are reasonably related to Defendants' interest in maintaining security and order and operating the institution in a manageable fashion are peculiarly within the province and professional expertise of corrections officials, as the Supreme Court has advised, the Court finds no evidence to support Plaintiff's substantive due process claim regarding his administrative segregation in the SMU and will grant summary judgment to Defendants.

### D.     Procedural Due Process

#### 1.     *Disciplinary Proceedings - Due process is satisfied where there is an opportunity to be heard and defend against misconduct reports.*

"[D]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports."  Smith, 293 F.3d at 653-54.  "In the context of disciplinary proceedings, a pretrial detainee is entitled to: (1) written notice of the misconduct charges at least twenty-four hours before the disciplinary hearing; (2) a written statement by the factfinder as to the evidence relied on and the reasons for the disciplinary action; and (3) a limited right to call witnesses and present documentary evidence in his defense when it would not be unduly hazardous to institutional safety or correctional goals to allow the inmate to do so."  McDowell, 2016 U.S. Dist. LEXIS 2448 at *24-26 (citing Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974); Stevenson, 495 F.3d at 70-71

(holding that <u>Wolff</u> governs prison disciplinary proceedings against pretrial detainees)).  Further, the requirements of due process are satisfied if there was "some evidence" to support the hearing officer's decision.  <u>See</u> <u>Superintendent, Massachusetts Correctional Institution v. Hill</u>, 472 U.S. 445, 455 (1985).  "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  <u>Id.</u> at 455-56.

In the Complaint, Plaintiff alleges Defendant Abt did not inform him that he had the right to call witnesses and present documentary evidence and did not give him a reason for her determination.  Compl. ¶ 20.  However, Plaintiff admits that he "was asked if he had any witnesses" and that he gave Defendant Abt the name of four witnesses.  Pl.'s Resp. Defs.' Mot. Summ. J. 4-5.  Plaintiff concedes that Defendant Abt interviewed three of the witnesses, which is also confirmed by the Hearing Disposition Form.  <u>See</u> Defs.' Mot. Summ. J. Ex. D.  While Plaintiff disputes the witnesses' statements and complains that Defendant Abt did not speak with the fourth witness, "[t]he prison administration is not required to allow a prisoner to cross-examine and confront witnesses in a disciplinary hearing and has the discretion to limit the hearing and the witnesses called to protect institutional security."  <u>Howard v. Werlinger</u>, 403 Fed. Appx. 776, 777 (3d Cir. 2010).  Moreover, DC-ADM 801, Section 3(D)(2) provides that "[u]p to three relevant witnesses, who have been properly requested, may be permitted" at a misconduct hearing.  <u>See also</u> <u>Thompson v. Lehaman</u>, No. 91-1501, 1992 U.S. Dist. LEXIS 1795, at *8 (E.D. Pa. Feb. 11, 1992) (finding that "DC-ADM 801 more than adequately requires that procedural due process be afforded to the inmates involved in disciplinary proceedings pursuant to its terms" and rejecting the plaintiff's constitutional challenge to the policy);

14

Seymour/Jones v. Blair, No. 92-5773, 1993 U.S. Dist. LEXIS 17043, at *14 n.8 (E.D. Pa. Dec. 1, 1993) (determining that the provision in BC-ADM 801, allowing an inmate to call up to three witnesses "clearly comports with the requirements of due process").  Accordingly, there was no due process violation by Defendant Abt in regard to Plaintiff's witnesses.

To the extent Plaintiff complains that Defendant Abt did not review the video surveillance, there was no due process violation for such failure.  See Guerrero v. Recktenwald, 542 Fed. Appx. 161, 164 (3d Cir. 2013) (determining that "the failure to review any video surveillance [was] inconsequential"); Tindell v. Beard, 351 Fed. Appx. 591, 594 (3d Cir. 2009) (concluding that the plaintiff did not state a claim for relief when he alleged that the hearing officer denied his request to view video evidence of the events precipitating the misconduct charge).

Finally, Defendant Abt's Hearing Disposition Form lists the reason for disposition and the evidence relied upon, which includes Plaintiff's statement.  See Defs.' Mot. Summ. J. Ex. D.  Plaintiff was asked to sign this form, but refused.[7]  See id.  As Plaintiff was admittedly given this Form to sign, his remaining alleged due process violation for Defendant Abt's alleged failure to provide him with a reason for the determination is also without evidentiary support.

The evidence establishes that Plaintiff was given written notice of the misconduct charges at least twenty-four hours before the disciplinary hearing.  See Compl. ¶ 15 (stating that on August 11, 2013, Defendant Panarello delivered the disciplinary report to Plaintiff); Compl. Ex. C.; Defs.' Mot. Summ. J. Ex. D (Disciplinary Hearing Administrator Form indicating that the

---

[7]      Plaintiff admits that he refused to sign the Hearing Disposition Form and contends only that Defendant Abt denied him an appeal sheet.  Pl.'s Resp. Defs.' Mot. Summ. J. 5; Pl.'s Mot. Summ. J. 3.  However, "the right to appeal a disciplinary conviction is not within the narrow set of due process rights delineated in Wolff."  Robinson v. Danberg, 729 F. Supp. 2d 666, 678 (D. Del. 2010 ) (citing Garfield v. Davis, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983)).

August 20, 2013 hearing, which was continued on August 21, 2013, was scheduled on August 16, 2013).  He was also provided with a written statement by Defendant Abt listing the reason for disposition and the evidence relied upon, although he refused to sign the form.  See Defs.' Mot. Summ. J. Ex. D (Hearing Disposition Form).  Finally, Plaintiff was afforded a "limited right to call witnesses and present documentary evidence" and was afforded an opportunity to testify on his own behalf.  See Pl.'s Resp. Defs.' Mot. Summ. J. 4 (stating that Plaintiff "was given a hearing . . . [and] explained everything that occurred on August 10, 2013").  Accordingly, there was no due process violation and summary judgment is granted in favor of Defendants on this claim.[8]  See McDowell, 2016 U.S. Dist. LEXIS 2448 at *24-26 (finding that the plaintiff failed to state a due process claim with respect to the allegedly fabricated misconduct report, the filing of which prompted his transfer to the SMU, and related disciplinary proceedings against him fifteen days later, at which time he was convicted and sentenced to an additional fifteen days of disciplinary confinement).

> **2.    *Administrative Segregation – Inmates may be placed in administrative detention when the inmate is pending an investigation or trial for a criminal act.***

"Pursuant to federal regulations governing inmate discipline and special housing units, the warden may place an inmate in administrative detention when the inmate 'is pending an investigation or trial for a criminal act.'"  Mackey v. Bureau of Prisons, No. 96-5286, 1997 U.S.

---

[8]    To the extent Plaintiff alleges that Defendant Abt was bias, there is no evidence to support this allegation.  Contrary to Plaintiff's assertion that Defendant Abt's report reflects that his witnesses never stated that he made any threats, which he suggests is evidence that Defendant Abt wanted "to show comradeship" to Defendant Panarello and that is why she decided to find Plaintiff guilty, the Disciplinary Hearing Administrator Form indicates that when interviewed, Emil Dale reported that Plaintiff "stated to c/o to eat his gun."  See Defs.' Mot. Summ. J. Ex. D. Moreover, in the Complaint, Plaintiff admits to using obscene language towards Defendant Panarello.  Compl. ¶ 11.  The record also reflects that Defendant Abt reviewed Defendant Goetter's incident report and the investigation report by Defendant Panarello.  See Defs.' Mot. Summ. J. Ex. D.

Dist. LEXIS 1592, at *4 (E.D. Pa. Feb. 13, 1997) (quoting 28 C.F.R. § 541.22(a)(3)). "Detainees have a liberty interest in not being subjected to punishment for the crime with which they have been charged until after they have been convicted and sentenced, but the governmental interest in maintaining prison security for the duration of their detention is substantial." Stevenson, 495 F.3d at 70. Consequently, "the process required for administrative transfers of pretrial detainees need not be extensive." Id. "Prison officials must provide detainees who are transferred into more restrictive housing for administrative purposes only an explanation of the reason for their transfer as well as an opportunity to respond." Id. (finding that this level of process comports with the Supreme Court's holding in Hewitt, 459 U.S. 460, "that the removal of a sentenced inmate from the general prison population and his transfer into administrative segregation requires at least a minimal degree of process").

In Stevenson, the Court determined that the "some notice" requirement was satisfied when the prison informed the plaintiffs more than seven months after their transfer to the Special Housing Unit of the reason for the administrative move and, further, that the plaintiffs' "opportunity to present [their] views" was satisfied through the grievance procedure. Stevenson v. Carroll, 2011 U.S. Dist. LEXIS 149200, at *31-34 (D. Del. Dec. 29, 2011) (citing Hewitt, 459 U.S. at 476), aff'd 474 Fed. Appx. 845 (3d Cir. 2012) (agreeing with the district court that the "plaintiffs received both notice and an opportunity to respond"). See also Sykes v. Carroll, 477 Fed. Appx. 861, 864 (3d Cir. 2012) (determining that while the defendants' failure to communicate with the inmate for at least fifteen months as to why he was moved to and held in the secure housing unit was troubling, as was the lack of notice, the defendants were entitled to immunity from suit).

In accordance with the decision of the Third Circuit Court of Appeals in Stevenson, the Court finds that Plaintiff's transfer to, and confinement in, administrative segregation for approximately two months, including twenty days of disciplinary detention, does not violate the constitution. Plaintiff concedes that on September 12, 2013, approximately two weeks after his disciplinary detention was completed, Lieutenant Platt informed him that he was still in segregation because of concerns that he was going to "start a Chester vs. Philly beef." Compl. ¶ 29. Also, Plaintiff admittedly had an opportunity to be heard about his placement through the numerous grievances he filed. See, e.g. Compl. Exs. C, L, M, N, P. Because Plaintiff received both notice and an opportunity to be heard regarding his placement in segregation, there is no procedural due process violation and Defendants' Motion for Summary Judgment is granted.

> **E.    Equal Protection - To establish a violation of Equal Protection, a plaintiff must show an allegedly offensive categorization that invidiously discriminates against a disfavored group.**

Plaintiff asserts that Defendants' continued confinement of him in the SMU after his disciplinary detention expired violated his equal protection rights under the Fourteenth Amendment.

"The Equal Protection Clause provides that no state shall 'deny to any person within its jurisdiction the equal protection of the laws.'" Artway v. Attorney Gen., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting U.S. Const. amend. XIV § 1). It is not a command that all persons be treated alike, but is essentially a direction that all persons similarly situated should be treated alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Artway, 81 F.3d at 1267. "To establish a violation of the Equal Protection Clause, a plaintiff must show an allegedly offensive categorization that invidiously discriminates against a disfavored group." Hernandez v. Guarini, No. 03-2298, 2004 U.S. Dist. LEXIS 18157, at *19 (E.D. Pa. Sept. 7, 2004) (citing Price v.

Cohen, 715 F.2d 87, 91 (3d Cir. 1983)).  "An equal protection violation in a prison setting requires proof that an inmate 'was treated differently than others similarly situated as a result of intentional or purposeful discrimination."  Mathis v. Monza, No. 11-450, 2013 U.S. Dist. LEXIS 36221, at *19-20 (W.D. Pa. Feb. 8, 2013).  Further, the inmate must demonstrate that his treatment was not reasonably related to any legitimate penological interests.  Id. at *19-20.

Plaintiff does not allege that he was treated differently from similarly situated inmates or that his unequal treatment was the result of intentional or purposeful discrimination for some impermissible reason.  See McClure v. Haste, No. 1:14-CV-2249, 2016 U.S. Dist. LEXIS 20031, at *25 (M.D. Pa. Feb. 19, 2016) (dismissing the equal protection claim because the plaintiff failed to allege "facts from which it can be concluded that Defendants engaged in intentional or purposeful discrimination or that he was treated differently than similarly situated individuals on the basis of his race or some other impermissible reason").  Although he complains that inmates in the SMU do not have the same access to exercise, visitation, and the law library as other max inmates, see Compl. ¶ 12, he does not allege that he did not have the same access as other inmates in the SMU.  Compare Small v. Owens, No. 06-1363, 2006 U.S. Dist. LEXIS 60876, at *28-29 (D.N.J. Aug. 10, 2006) (finding that the inmate may be able to establish an equal protection claim because there would appear to be no rational basis for denying him access to the law library when other inmates in administrative segregation are permitted to attend the library).  Plaintiff also fails to point to any evidence that would show Defendants did not have a legitimate penological interest in his continued segregation.  Thus, in the absence of any allegations or evidence to support an equal protection claim, summary judgment is entered in favor of Defendants.  See Heller v. Keenhold, No. 1:04-CV-1893, 2006 U.S. Dist. LEXIS 16525, at *23

(M.D. Pa. Mar. 24, 2006) (determining that the plaintiff had not included any allegations to support an equal protection violation).

    **F.**    **Verbal Harassment - Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under Section 1983.**

"Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner." Brown v. Hamilton Police Dep't, No. 13-260, 2013 U.S. Dist. LEXIS 87419, at *6 (D.N.J. June 21, 2013). See also Verbanik v. Harlow, 512 F. App'x 120, 123 (3d Cir. 2013) (holding that a prisoner's allegations of verbal harassment in retaliation for filing of grievances do not state a cognizable claim under § 1983); Boomer v. Lewis, 541 F. App'x 186, 192 (3d Cir. 2013) ("Mere verbal harassment or abuse is not a civil rights violation."). Specifically, "mere gestures or verbal harassment do not give rise to a substantive due process claim." Willson v. Yerke, No. 3:10-CV-1376, 2013 U.S. Dist. LEXIS 180065, at *23 (M.D. Pa. Dec. 23, 2013), aff'd 604 F. App'x 149 (3d Cir. 2015) (explaining that even extreme verbal harassment does not typically shock the conscience as to violate due process). Also, "verbal threats do not constitute adverse action for purposes of stating a retaliation claim under the First Amendment." Chruby v. Kowaleski, 534 Fed. Appx. 156, 161 (3d Cir. 2013). Compare Marten v. Hunt, 479 Fed. Appx. 436, 438 (3d Cir. 2012) (reasoning that ongoing verbal harassment, coupled with allegations that the defendant demanded the plaintiff withdraw grievances and the filing of a false misconduct by the defendant, is sufficiently severe enough to deter a person of ordinary firmness from exercising his constitutional rights). "Verbal harassment of a prisoner, without more, [also] does not violate the Eighth Amendment." Brown v. Deparlos, 492 F. App'x 211, 215 (3d Cir. 2012); Mimms v. U.N.I.C.O.R., 386 F. App'x 32, 35 (3d Cir. 2010). However, "Courts in the Third Circuit have recognized that being labeled a 'snitch' may constitute an Eighth Amendment

violation if the prison official acted with deliberate indifference to a substantial risk of serious harm to the inmate." Williams v. Thomas, No. 12-01323, 2013 U.S. Dist. LEXIS 60430, at *17 (E.D. Pa. Apr. 29, 2013).

In the Complaint, Plaintiff alleges that Defendant Atkins verbally harassed him in front of Defendant Bryan, who encouraged such conduct. Compl. ¶ 31. He contends that Defendant Atkins called him a snitch for filing grievances. Id. at ¶ 33. In his Answers to Interrogatories, however, Plaintiff was unable to identify any actions or inactions Defendant Bryan took that violated his constitutional rights. See Defs.' Mot. Summ. J. Ex. H ¶ 4, ECF No. 58-8. Rather, Plaintiff responded that he may seek dismissal of Defendant Bryan upon completion of discovery. Id. Defendants argue that Defendant Bryan did not violate Plaintiff's First Amendment rights because verbal harassment is not actionable under section 1983. Defs.' Mot. Summ. J. 16-17.

Upon review, the Court finds that Plaintiff does not allege that Defendant Atkins or Defendant Bryan committed any reinforcing act, nor does he allege an injury. See Hinton v. Tennis, No. 08-0295, 2009 U.S. Dist. LEXIS 20642, at *11 (E.D. Pa. Mar. 12, 2009) (determining that the plaintiff's emotional injury claims were barred because the plaintiff did not contend that the verbal harassment was accompanied by any type of reinforcing act); Smith v. Unell, No. 95-CV-8029, 1996 U.S. Dist. LEXIS 8794, at *5-6 (E.D. Pa. June 19, 1996) (finding that the plaintiff's allegations that the defendant violated his due process rights under the Fourteenth Amendment and subjected him to cruel and unusual punishment in violation of the Eighth Amendment, by directing racial epithets and other discriminatory comments toward him did not state a cognizable claim absent a reinforcing act and entering judgment in favor of the defendants). To the extent Plaintiff alleges that he was labeled a "snitch," Plaintiff fails to

provide any evidence to show that by being labeled a snitch he was exposed to a substantial risk of harm. See Jamison v. Varano, No. 1:12-CV-1500, 2015 U.S. Dist. LEXIS 103325, at *16-17 (M.D. Pa. Aug. 6, 2015) (granting the defendants' motion for summary judgment because the plaintiff failed to "show that he was incarcerated under conditions posing a substantial risk of serious harm" based on being labeled a snitch). He does not, for example, point to any evidence that other inmates overheard Defendant Atkins' slur or that he was threatened as a result. Therefore, Plaintiff fails to state a claim against Defendants Bryan and Atkins in this regard and summary judgment is granted in favor of Defendants.

### G.     Non-Moving Defendants – Never Served with Complaint.

More than 120 days[9] have passed since the filing of the Complaint, including the completion of discovery, and Defendants Panarello, Wackoo, and Atkins have not been served. Although Plaintiff has long been aware that the Marshals were unable to complete service at the addresses he provided for these Defendants, see ECF No. 45, he has not submitted correct address information. See Anderson v. Mercer County Sheriff's Dep't, No. 11-cv-7620, 2014 U.S. Dist. LEXIS 71776, at *12 (D.N.J. May 27, 2014) (explaining that "pro se litigants are not excused from complying with the Federal Rules of Civil Procedure governing service of process"). Regardless, the Court will enter judgment is favor of the remaining Defendants, Panarello, Atkins, and Wackoo, sua sponte.

The United States Supreme Court recognizes that "district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that [he] had to come forward with all of [his] evidence." Celotex,

---

[9]     Although Rule 4(m) currently provides 90 days for service, at the time this action was initiated the Rule allowed 120 days to complete service. Fed. R. Civ. P. 4(m).

477 U.S. at 326; <u>Abulkhair v. Page-Hawkins</u>, 448 Fed. Appx. 291, 294 (3d Cir. 2011) ("[T]he entry of summary judgment sua sponte . . . is permissible when the District Court provides notice of its intention to entertain summary judgment and an opportunity to respond.").  Notice is satisfied if "the targeted party had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward."  <u>Couden v. Duffy</u>, 446 F.3d 483, 500 (3d Cir. 2006) (quoting <u>Gibson v. Mayor & Council of Wilmington</u>, 355 F.3d 215, 222 (3d Cir. 2004)). Where the grounds for dismissal of a claim against a moving defendant are identical for those against a non-moving defendant, the plaintiff had notice of all of the issues and a fair opportunity to address them in full.  <u>Couden</u>, 446 F.3d at 500.

For the reasons discussed herein, the grounds to dismiss the moving Defendants are identical to the grounds to dismiss Defendants Panarello, Wackoo, and Atkins.[10]  Plaintiff had a full opportunity to respond to Defendants' Motion for Summary Judgment, which challenged not the facts against the individual Defendants but the claims themselves.  <u>See</u> <u>Evans v. MAAX-KSD Corp.</u>, No. 06-cv-2804, 2008 U.S. Dist. LEXIS 6333, at *17 n.3 (E.D. Pa. Jan. 25, 2008) (concluding that it could grant summary judgment sua sponte because the plaintiff argued "his case on the retaliation issue in both his Response and his Surreply, and has thus had a fair opportunity to present evidence and legal argument in support of this claim").  Additionally, Plaintiff presented his own Motion for Summary Judgment seeking judgment on the same claims

---

[10]     Although Plaintiff alleges that Defendant Atkins committed the verbal harassment, while Defendant Bryan encouraged the harassment, his constitutional claim based on these actions is the same, as are the grounds for dismissal.  <u>See</u> <u>Gooden v. Pennsylvania</u>, No. 10-3792, 2010 U.S. Dist. LEXIS 131061, at *22 (E.D. Pa. Dec. 10, 2010) (determining that where the plaintiff had been fully heard with regard to the allegations in certain counts as to the moving defendants and dismissal of those counts did "not hinge on facts or actions unique to the moving defendants but instead on issues of law common to all individual defendants," the plaintiff was not prejudiced by a sua sponte dismissal of the count as to all defendants, including a non-moving defendant that had yet to be served with the complaint).

asserted against the three non-moving Defendants.  Consequently, summary judgment is also entered in favor of Defendants Panarello, Wackoo, and Atkins.  See Healy v. AG Pa., 563 F. App'x 139, 143 (3d Cir. 2014) (finding that the district court's dismissal was proper because plaintiffs had notice and an opportunity to respond and the grounds for dismissal applied equally to the moving and non-moving defendants).

## V.   **CONCLUSION**

For the reasons set forth herein, Defendants' Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.

A separate order will be issued.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge